UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRIS ALAN SCHITTLER, | |
| Plaintiff, | CIVIL ACTION NO. 1:23-CV-00476 |
| v. | |
| IRON VALLEY CEILINGS, LLC, | (MEHALCHICK, J.) |
| Defendant. | |

## MEMORANDUM

This action was commenced upon the filing of a complaint by Plaintiff, Chris Alan Schittler ("Schittler") against Defendant Iron Valley Ceilings, LLC ("Iron Valley Ceilings") on March 17, 2023. (Doc. 1). On July 26, 2023, Schittler filed the operative amended complaint asserting claims pursuant to Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et. seq., and the Pennsylvania Human Relations Act ("PHRA"), arising from his employment with Iron Valley Ceilings, and his subsequent termination. (Doc. 15). Before the Court is a motion for summary judgment filed by Iron Valley Ceilings (Doc. 34). For the following reasons, the motion for summary judgment will be **DENIED.** (Doc. 34).

## I. BACKGROUND AND PROCEDURAL HISTORY

The relevant factual background to Iron Valley Ceiling's motion is as follows.[1] Iron Valley Ceilings is a construction company that provides acoustical and ceiling work, drywall

---

[1] This factual summary is taken from the parties' statements of material facts, supporting exhibits, and briefs. (Doc. 1; Doc. 15; Doc. 34; Doc. 35; Doc. 35-3; Doc. 35-3; Doc. 35-4; Doc. 35-5; Doc. 35-6; Doc. 35-7; Doc. 35-8; Doc. 35-9; Doc. 35-10; Doc. 35-11; Doc. 35-12; Doc. 35-13; Doc. 35-14; Doc. 35-15; Doc. 35-16; Doc. 35-17; Doc. 35-18; Doc. 35-19; Doc. 35-20; Doc. 36; Doc. 39; Doc. 39-2; Doc. 39-3; Doc. 39-4; Doc. 39-5; Doc. 39-6; Doc. 39-7; Doc. 39-8; Doc. 39-9; Doc. 39-10; Doc. 39-11; Doc. 39-12; Doc. 39-13; Doc. 39-14; Doc. 39-15; Doc. 39-16; Doc. 39-17; Doc. 39-18; Doc. 39-19; Doc. 39-20; Doc. 39-21; Doc. 39-22; Doc. 39-23; Doc. 43; Doc. 44).

construction, and metal framing. (Doc. 35, ¶ 2; Doc. 39-1, ¶ 2). On June 28, 2018, Schittler was hired to work as a project manager/site superintendent and safety manager of the drywall and finishing department for Iron Valley Ceilings. (Doc. 35, ¶¶ 3-4; Doc. 39-1, ¶¶ 3-4). Bob Lingle ("Lingle"), owner of Iron Valley Ceilings, hired Schittler on the recommendation of Project Manager/Estimator Mike Nye ("Nye"), who had worked with Schittler at Zook Interiors, Schittler's previous employer where her performed mostly office work. (Doc. 35, ¶¶ 5-6, 9; Doc. 39-1, ¶¶ 5-6, 9). Schittler worked with and supervised several individuals, including Site Supervisor Joel Blair ("Blair"), Laborer Robert "Bobby" Hurt ("Hurt"), Foreman Todd Haulman ("Haulman"), Laborer Scott Cortazzo ("Cortazzo"), Laborer John Frankhouser ("Frankhouser"), Laborer Seva Soltanov ("Soltanov"), Laborer Tyler Phillips ("Phillips"), and Laborer Chris Strupp ("Strupp"). (Doc. 39-4, at 14-16; Doc. 39-7, at 10; Doc. 39-12, at 10).

On or around April, 2019, Schittler suffered a back injury while working on a project for Iron Valley Ceilings. (Doc. 39-4, at 13, 32-33). Schittler then experienced a flare-up or reinjured his back on July 15, 2020, and notified his employer of the injury through an incident report (Doc. 39-10) with HR official Paige Kline. Schittler took time off work to attend doctor appointments for his injury, which he characterizes as an accommodation request. (Doc. 35, ¶¶ 33-34; Doc. 39-2, ¶¶ 33-34). Due to his injury, Schittler at times limited his physical labor and assigned tasks to his subordinates that he could not complete. (Doc. 39-4, at 35, 72-73; Doc. 39-18, at 4). Iron Valley Ceilings contests the characterization of these changes as "accommodation requests" and avers that Schittler did not provide documentation from a healthcare provider or anyone else about limitations or necessary accommodation besides the incident report. (Doc. 35, at 8-9; Doc. 39-10).

2

On April 29, 2022, Iron Valley Ceilings terminated Schittler's employment. (Doc. 35, ¶ 12; Doc. 39-2, ¶ 12). Iron Valley Ceilings submits that when Schittler was terminated, it was due to a failure to properly supervise his subordinates and mistreating subordinates which led to these subordinate employees threatening to quit. Lingle supported this in his deposition testimony. (Doc. 35, ¶ 13; Doc. 35-5, at 29; Doc. 39-7, at 12). Schittler disputes this assertion, alleging that when he was fired, Lingle told him the reason was that "no one liked me" and "he didn't have work for him." (Doc. 39-4, at 39). Schittler further disputes that Iron Valley Ceilings had no work for him because he had lists of projects and jobs that needed to be completed and no one else had been let go due to lack of work. (Doc. 39-4, at 39; Doc. 39-7, at 18; Doc. 39-18, at 4). Schittler instead contends that he was fired because of his disability. Specifically, according to Schittler, his subordinates disliked him and complained about him because when he was unable to perform heavy physical labor due to his disability, his subordinate employees complained that "Plaintiff 'walk[s] around and doesn't do anything.'" (Doc. 39-18, at 4). Schittler points out several other pieces of evidence that employees disliked him because of his disability. For instance, Schittler provides that shortly after experiencing a flare-up, Blair sent Schittler a series of harassing text messages, which included Blair telling him that "You are a fucking joke;" "It's no wonder all the contractors fucking hate your dumb ass;" and "Since Mike is not here to wipe your ass for you . . . if you have any questions feel free to call me just so you don't make [our] whole company look like a bunch of retards." (Doc. 35, at 6; Doc. 39-2, at 10-11; Doc. 39-16, at 1-3; Doc. 39-18, at 4). Schittler also received a chocolate penis sent to his home, which he believes was sent by coworkers. (Doc. 35, at 6; Doc. 39-2, at 10; Doc. 39-4, at 39; Doc. 39-13, at 1-3). Schittler submits that his coworkers were upset that he was unable to work due to his disability and sent the chocolate penis to

retaliate against him for his inability to work. (Doc. 35, at 6; Doc. 39-2, at 10; Doc. 39-4, at 13, 39; Doc. 39-13, at 1-3). To reiterate, according to Schittler, the messages and the package were sent shortly after occasions on which Schittler required assistance with heavy manual labor due to his disability. (Doc. 39-2, at 10; Doc. 39-4, at 13, 39; Doc. 39-13, at 1-3).

Schittler reported the harassment to Lingle and Nye. (Doc. 35, at 7-8; Doc. 39-2, at 11-14). In February 2022, he had a meeting with Lingle, Nye, and Estimator Kirk Shertzer ("Shertzer"). (Doc. 35, ¶ 17; Doc. 39-2, ¶ 17). The parties dispute what occurred at the meeting. (Doc. 35, ¶ 17; Doc. 39-2, ¶ 17). According to Iron Valley Ceilings, the meeting was held to warn Schittler about mistreating his subordinates and ask him to change his behavior. (Doc. 35, ¶ 17). Schittler, meanwhile, denies that he was instructed to correct any behavior during the meeting, instead submitting that at the meeting, Lingle shared with him that subordinates were complaining that he was "lazy." (Doc. 39-2, ¶ 17). As Schittler sees it, this was in direct reference to his disability and need for accommodations during flare-ups. (Doc. 39-2, ¶ 17). The crux of this matter's factual dispute is that Iron Valley Ceilings maintains that Schittler's termination was due to workplace performance and behavioral issues, while Schittler argues that his termination was a direct result of disability discrimination and retaliation. (Doc. 35, at 5; Doc. 39-2, at 11-21).

On March 17, 2023, Schittler initiated this action by filing a complaint against Iron Valley Ceilings. (Doc. 1). On July 26, 2023, Schittler filed the operative amended complaint asserting violations of the ADA and PHRA, including disability discrimination, retaliation, and wrongful termination. (Doc. 15). On August 10, 2023, Iron Valley Ceilings filed its answer to the amended complaint. (Doc. 16). On July 5, 2024, Iron Valley Ceilings filed a motion for summary judgment and a brief in support, as well as a statement of facts and

exhibits. (Doc. 35; Doc. 35-3; Doc. 35-3; Doc. 35-4; Doc. 35-5; Doc. 35-6; Doc. 35-7; Doc. 35-8; Doc. 35-9; Doc. 35-10; Doc. 35-11; Doc. 35-12; Doc. 35-13; Doc. 35-14; Doc. 35-15; Doc. 35-16; Doc. 35-17; Doc. 35-18; Doc. 35-19; Doc. 35-20). On July 18, 2024, Schittler filed a brief in opposition, a response to Iron Valley Ceilings's statement of facts, and exhibits. (Doc. 36; Doc. 39; Doc. 39-2; Doc. 39-3; Doc. 39-4; Doc. 39-5; Doc. 39-6; Doc. 39-7; Doc. 39-8; Doc. 39-9; Doc. 39-10; Doc. 39-11; Doc. 39-12; Doc. 39-13; Doc. 39-14; Doc. 39-15; Doc. 39-16; Doc. 39-17; Doc. 39-18; Doc. 39-19; Doc. 39-20; Doc. 39-21; Doc. 39-22; Doc. 39-23). On August 8, 2024, Iron Valley Ceilings filed a reply brief. (Doc.43). Accordingly, the matter is now ripe for disposition.

## II.    LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

## III.    DISCUSSION

Schittler alleges several violations of the ADA and PHRA,[2] including disability discrimination, retaliation, wrongful termination, and hostile work environment.[3] (Doc. 15). In order for a plaintiff to establish a *prima facie* case of discrimination under the ADA, the plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment

---

[2] In general, "analysis of an ADA claim applies equally to a PHRA claim." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts....")). Because these two statutes are generally coextensive, the Court will address the merits of each claim solely under the ADA. *See Taylor*, 184 F.3d at 306; *Kelly*, 94 F.3d at 105.

[3] As a preliminary matter, Schittler has submitted a motion for leave to file a sur-reply in order to respond to the hostile work environment arguments, which it laid out in its reply brief. (Doc. 45; Doc. 46, at 2-3; Doc. 47, at 2; Doc. 43, at 11-15). Schittler contends that Iron Valley Ceilings's discussion of the hostile work environment claim in its reply brief is impermissible, as Iron Valley Ceilings did not address hostile work environment in its initial brief. (Doc. 46, at 2). Iron Valley Ceilings, meanwhile, argues that the hostile work environment claim is a "rehash[ing of] the same set of facts that are relevant to his discrimination case" and that "[t]here is no new evidence between the discrimination claim Plaintiff alleges and the hostile work environment claim." (Doc. 47, at 2). Further, Iron Valley Ceilings points out, the purpose of a sur-reply is to allow plaintiffs to address previously unaddressed arguments raised for the first time in a reply brief. (Doc. 47, at 2-3). Thus, because Schittler argued his hostile work environment claim in his brief in opposition to the motion for summary judgment, a sur-reply is unnecessary. (Doc. 47, at 2-3). Contextualized within the framework of the ADA, Schittler's claim of discrimination based on his disability is essentially a hostile-work-environment cause of action. *Belles v. Wilkes-Barre Area Sch. Dist.*, No. 3:17-CV-01016, 2020 WL 1028338, AT *9 (M.D. Pa. Mar. 3, 2020), *aff'd*, 843 F. App'x 437 (3d Cir. 2021) (analyzing an ADA disability discrimination claim as a hostile work environment claim). The Court agrees with Iron Valley Ceilings that the evidence of discrimination and hostile work environment overlaps, and the issue has been fully briefed based upon Schittler's arguments in its brief in opposition. (Doc. 43, at 11-15). Schittler's motion for leave to file a sur-reply is therefore **DENIED**. (Doc. 45). In the interest of thoroughness and completeness, however, the Court will conduct legal analyses for the parties' arguments about disability discrimination and hostile work environment separately.

decision as a result of discrimination." *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).[4]

A.    SCHITTLER'S DISABILITY DISCRIMINATION CLAIMS

Iron Valley Ceilings moves for summary judgment on Schittler's disability discrimination claims, arguing that Schittler was not qualified to perform the essential functions of his job and was terminated for legitimate non-discriminatory reasons. (Doc. 36, at 15). Schittler responds that he was qualified for his job and that there is abundant evidence from which this Court can infer disability discrimination. (Doc. 39-23, at 20-26).

1.    **Qualified Individual**

Iron Valley Ceilings first argues that it is entitled to summary judgment on Schittler's disability discrimination claim because he was not an "otherwise qualified" individual under the ADA due to his incompetence and mistreatment of subordinate employees. (Doc. 36, at 10-11, 16-17). Schittler responds that he was not incompetent or mistreating subordinates, that his subordinates complained about his work only because they disliked that he was

---

[4] Schittler also requests the opportunity to respond to Iron Valley Ceilings's blanket objection to his counterstatement of facts. (Doc. 46, at 3). Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." Local Rule of Court 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Local Rule of Court 56.1. Although separate counterstatements of fact not directly responsive to the movant's statement of fact are not contemplated by the Local Rule, the Court may consider the entire record to ascertain the relevant factual background for this matter, but the Court may assign those additional statements no evidentiary value. *Rau v. Allstate Fire & Cas. Ins. Co.*, No. 3:16-CV-0359, 2018 WL 6422121, at *2 (M.D. Pa. Dec. 6, 2018); *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates*, 39 F. Supp. 2d 517, 519 n.1 (M.D. Pa. 1999). Accordingly, the Court will consider the entire record, but will assign no evidentiary value to Schittler's counterstatement of facts that are not directly responsive to Iron Valley Ceilings's statement of material facts. (Doc. 35; Doc. 39-2).

unable to complete heavy physical labor because of his back injury, and that other employees for Iron Valley Ceilings detailed Schittler's "solid competency." (Doc. 39-23, at 20).[5]

Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined by the ADA as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d Cir. 2002) ("The EEOC regulations divide this inquiry into two parts: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position.") (citing 9 C.F.R. § 1630.2(m)). The focus of this inquiry is not whether an employee can perform all aspects of the job, but essential ones. *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 147 (3d Cir. 1998) ("Congress explained that the Act focused on an individual's ability to perform 'essential functions' to ensure that persons

---

[5] Iron Valley Ceilings also disputes, albeit in passing, whether Plaintiff had a qualifying disability to begin with. (Doc. 36, at 16). However, it is well-established that "'[t]he question of whether an individual meets the definition of disability under this part should not demand extensive analysis.'" *Ramsay v. Nat'l Bd. of Med. Examiners*, No. 19-CV-2002, 2019 WL 7372508, at *17 (E.D. Pa. Dec. 31, 2019), *aff'd*, 968 F.3d 251 (3d Cir. 2020) (quoting 29 C.F.R. § 1630.1(c)(4), 1630.2(j), and 28 C.F.R. § 36.101(b)). Given Plaintiff's record of a back injury, that Plaintiff would need to leave work for healthcare appointments and refrain from heavy lifting during flare-ups, and Defendant's knowledge that Plaintiff would require the aforementioned adjustments, this Court finds that Plaintiff satisfies the first element, that he had a disability under the ADA. (Doc. 35, ¶¶ 33-34; Doc. 39-2, ¶¶ 33-34; Doc. 39-4, at 35, 72-73; Doc. 39-10; Doc. 39-18, at 4).

with disabilities 'not be disqualified because of the inability to perform non-essential or marginal functions of the job.' ") (quoting House Judiciary Report at 31–32, reprinted in 1990 U.S.C.C.A.N. at 454). Whether a function is "essential" is a factual determination. *See Deane*, *142 F.3d at 148* ("whether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] all relevant evidence.' ") (quoting 29 C.F.R. pt. 1630, app. § 1630.2(n)). A "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Iron Valley Ceilings asserts that Schittler was not a qualified individual under the ADA because he was incompetent and mistreated subordinate employees. (Doc. 36, at 10-11, 16-17). Evidence in the record does support that some subordinate employees complained about Schittler's behavior at work. (Doc. 25-7, at 15-17). Specifically, Schittler's subordinate Blair testified that he had seen and received a photo of Schittler "standing in the corner sleeping or something" while at work. (Doc. 35-7, at 15). Blair also testified that contractors complained about the quality of Schittler's work, likening it to that of a toddler and that they threatened to quit in response to Schittler's alleged incompetency. (Doc. 35-7, at 17).

Schittler, however, testified and responded to interrogatories stating that these complaints were not actually about his competence but were a direct result of employees being upset that Schittler would have to tell them what to do while he was unable to complete the

manual labor himself due to his back injury. (Doc. 39-4, at 13, 35; Doc. 39-18, at 4). His evidence for these beliefs is that the complaints and harassment would occur shortly after he experienced a disability flare-up. (Doc. 39-4, at 13, 35; Doc. 39-18, at 4). Schittler also points to evidence in the record confirming that other employees for Iron Valley Ceilings believed Schittler was doing a good job. For instance, the owner of Iron Valley Ceilings, Lingle, testified that Schittler "a good employee," suggesting that the issues did not arise from his competency but because "people just didn't get along with him." (Doc. 39-7, at 10). Another supervisor, Shertzer, also testified that Schittler was a good employee because he "tracked jobs well and would try to bring them in on or under budget," that Schittler was "skilled" at his job and that he never received any disciplinary action that Shertzer was aware of. (Doc. 39-8, at 6). Nye, another supervisor of Schittler, confirmed in his deposition that Schittler was skilled at his job and did it "very well," faced no disciplinary action, and was not aware of specific mistakes that Schittler made while working for Iron Valley Ceilings. (Doc. 39-9, at 7). That Schittler was "incompetent" also seems to be questioned by the evidence presented that Lingle himself hired Schittler to complete a fence project at his own house. (Doc. 39-4, at 49; Doc. 39-7, at 13).

Given the evidence in the record, the Court finds that a genuine issue of material fact exists as to whether Schittler demonstrated legitimate incompetency or whether he was qualified to perform the essential functions of his former job. *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).

### 2.    Legitimate Non-Discriminatory Reasons

Federal courts apply the *McDonnell Douglas* burden-shifting framework to assess ADA disparate treatment claims. *Shaner*, 204 F.3d at 500 (citing *McDonnell Douglas Corp. v. Green*,

11

411 U.S. 792 (1973)). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate nondiscriminatory reason" for the alleged discriminatory action. *McDonnell Douglas*, 411 U.S. at 802.

Iron Valley Ceilings asserts that, even if Schittler was otherwise qualified for his job, his discrimination claim still fails because it had legitimate, non-discriminatory reasons for firing him. (Doc. 38, at 16-17). Iron Valley Ceilings namely cites Schittler's alleged incompetency and complaints by subordinates. (Doc. 35-7, at 17; Doc. 36, at 17; Doc. 39-7, at 12). However, according to evidence in the record, and as discussed *supra*, there are genuine questions regarding whether Schittler was actually incompetent, why subordinates were threatening to quit, and whether Schittler was performing his job duties well. (Doc. 39-2, at 10; Doc. 39-4, at 13, 39). Schittler also points out that Iron Valley Ceilings gave conflicting reasons for his termination over time, shifting from a lack of work to a threatened mass exodus to incompetence, which is probative of pretext. (Doc. 39-7, at 18; Doc. 39-23, at 24); *see Mikell v. Marriott Int'l, Inc.*, 789 F. Supp. 2d 607, 614–15 (E.D. Pa. 2011) ("'[i]f a plaintiff demonstrates that the reasons given for her termination did not remain consistent, beginning at the time they were proffered and continuing throughout the proceedings, this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record.'") (quoting *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 284 (3d Cir.2001)). Iron Valley Ceilings submits that the reason it has provided different rationalizations for Schittler's termination is that there were several reasons for it. (Doc. 43, at 6-7). In sum, Schittler has offered one rationale for his termination, and Iron Valley Ceilings has offered another. The evidence in the record contains support for both, namely that the

complaints about Schittler began shortly after he experienced an injury flare-up and that other employees did in fact complain about Schittler. (Doc. 35-5, at 29; Doc. 39-2, at 10; Doc. 39-4, at 13, 39; Doc. 39-7, at 12; Doc. 39-13, at 1-3). Given the evidence in the record and the disputed issues of fact as to why Iron Valley Ceilings terminated Schittler, the Court finds that a reasonable juror could conclude that Iron Valley Ceilings did not have a legitimate reason for firing Schittler.

B.    SCHITTLER'S RETALIATION CLAIMS

Iron Valley Ceilings argues that it is entitled for summary judgment on Schittler's retaliation claims because Schittler did not engage in a protected activity, namely, formally requesting an accommodation and that even if his verbal discussions of a need for an accommodation is considered a protected activity, there is no evidence of a causal link between Schittler's accommodation request and his termination. (Doc. 36, at 19-21). Iron Valley Ceilings maintains that it has proffered legitimate reasons for terminating Schittler's employment, including the threatened mass exodus of employees if Schittler remained employed, and the slowing contract work for Iron Valley Ceilings. (Doc. 36, at 21). Schittler, on the other hand, maintains that because of temporal proximity between the harassment by Blair and other employees, Schittler's termination, and the instances when Schittler experienced injury flare-ups and subsequent reassignment of heavy labor duties to other employees, this Court can find evidence of retaliation. (Doc. 39-23, at 28-29).

To establish a *prima facie* case of retaliation a plaintiff must demonstrate "(1) [a] protected employee activity; (2) [an] adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Shellenberger v. Summit*

13

*Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003). "Unlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff had a reasonable good faith belief that he was entitled to request the reasonable accommodation he requested." *Payne v. Woods Services, Inc.*, 520 F. Supp. 3d 670, 680 (E.D. Pa. 2021) (quoting *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010)). If the plaintiff can establish a *prima facie* case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its decision. *McDonnell Douglas*, 411 U.S. at 802, *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). If the defendant meets this minimal burden, the plaintiff must point to evidence "that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 501 (3d Cir. 1997).

The parties dispute only the first and third element of a *prima facie* retaliation case: whether Schittler engaged in a protected activity and whether there is a causal connection between the protected activity and his termination. *Krouse*, 126 F.3d at 500. A causation analysis often, but not exclusively, rests on two key factors: "(1) the temporal proximity between the protected activity and the alleged retaliation and (2) the existence of any pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (internal quotations omitted). "The Court measures temporal proximity from the date on which the litigant engaged in his first protect[ed] action." *Gairloch v. Pennsylvania State Univ.*, 84 F. Supp. 3d 407, 418 (M.D. Pa. 2015). "Timing alone raises the requisite inference when it is 'unusually suggestive of retaliatory motive,' but even if 'temporal proximity ... is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Jensen,*

435 F.3d at 450 (quoting *Krouse*, 126 F.3d at 503-04). In the absence of unusually suggestive temporal proximity or a pattern of antagonism, courts "consider all of the proffered evidence as a whole to determine whether it may suffice to raise the inference" of causation. *Straka v. Comcast Cable*, 897 F. Supp. 2d 346, 367 (W.D. Pa. 2012) (quotation omitted); *see also Farrell*, 206 F.3d at 280–81 ("Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the *prima facie* case through other types of circumstantial evidence that support the inference."). Regardless of the evidence a plaintiff relies on to establish causation, however, a plaintiff must also satisfy an initial gateway requirement by establishing that the defendant knew of the plaintiff's protected activity. *See Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct.").

Schittler submits that he engaged in a protected activity when he verbally requested disability accommodations during a February 3, 3033 meeting with Lingle, and also described harassment. (Doc. 39-23, at 28). While Iron Valley Ceilings disputes that Schittler requested accommodations in the procedures required by Iron Valley Ceilings's policies (Doc. 36, at 20), it is undisputed that Schittler filed an incident report, showing that at least some members of the management team were aware of Schittler's injuries. (Doc. 39-10). Schittler further asserts that his report of the chocolate penis constitutes a protected activity, as well as his reports of harassing text messages from Blair. (Doc. 39-18, at 4; Doc. 39-23, at 28). At the summary judgment stage, the Court must infer that Schittler's reports to his supervisors included complaints that he was being discriminated against, as Schittler avers. *See Sabo v.*

*UPMC Altoona*, 386 F. Supp. 3d 530, 548 (W.D. Pa. 2019) (finding that a plaintiff engaged in a protected activity when she complained about a negative performance review that she alleged she believed was due to disability discrimination). The Court thus finds Schittler has presented evidence that he engaged in a protected activity by alleging that he reported harassment by coworkers and shared that he believed such harassment was due to his disability. (Doc. 39-18, at 4; Doc. 39-23, at 28); *see Sabo*, 386 F. Supp. 3d at 548.

However, Schittler has failed to meet his burden to establish evidence of a causal connection between his termination and his reports of harassment/request for accommodations. *Krouse*, 126 F.3d at 500. He reported the text message harassment to Lingle on April 11, 2022. (Doc. 39-18, at 4). He was subsequently terminated on April 29, 2022. (Doc. 39-18, at 4). In the intervening period, Iron Valley Ceilings issued a written warning to Blair, who had sent the harassing text messages, and the messages had stopped. (Doc. 35-4, at 17-18; Doc. 35-7, at 20-21). The discipline of Blair supports Iron Valley Ceilings's position that it did not fire Schittler because of his reports of harassment. Schittler does not present any evidence of other antagonism occurring in the intervening time. (Doc. 39-2). The 18-day temporal gap between Schittler's alleged verbal request for accommodations or his reports of harassment is not suggestive of causation. (Doc. 39-18, at 4); *see Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (finding temporal proximity not unduly suggestive where three weeks elapsed between the protected activity and the adverse employment action); *Kier v. F. Lackland & Sons*, LLC, No. CIV.A. 14–897, 2014 WL 7192403, at *17 (E.D. Pa. Dec. 17, 2014) ("Absent some intervening antagonism, Plaintiff cannot rest solely on a temporal proximity of more than one week."). Thus, Schittler has not met his

burden to establish evidence of causation. (Doc. 39-23). Accordingly, Defendant's motion for summary judgment on the retaliation claims will be **GRANTED**. (Doc. 34).

C.    SCHITTLER'S HOSTILE WORK ENVIRONMENT CLAIMS

While not explicitly pled in the heading of Count I or Count II, Schittler's amended complaint includes allegations of "hostile work environment." (Doc. 15). Iron Valley Ceilings did not initially move for summary judgment on this claim explicitly but replied to Schittler's arguments about a hostile work environment in its reply brief. (Doc. 34; Doc. 43). As discussed *supra n.5*, the Court will consider both parties' arguments on the issue of hostile work environment.

To establish a *prima facie* case of such cause of action under the ADA, an employee must show that:

> (1) [he] is a qualified individual with a disability under the ADA; (2) [ ]he was subject to unwelcome harassment; (3) the harassment was based on h[is] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 151-52 (3d Cir. 2017) (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999)).

To be sufficiently severe or pervasive, the harassment must "'alter the conditions of the victim's employment and create an abusive working environment.'" *Ballard-Carter*, 703 F. App'x at 152 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Courts consider "all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Lowenstein v. Catholic Health E.*, 820 F. Supp. 2d 639, 647 (E.D. Pa. 2011) (quoting *Walton*, 168 F.3d at 667). The

ADA, however, "does not make all harassment, or every unpleasant working environment, actionable under the law. Rather, to constitute a hostile work environment under the ADA the harassing conduct must be *because* of the plaintiff's disability." *Griffin v. Municipality of Kingston*, No. 3:08–CV–2290, 2011 WL 718697, at *5 (M.D. Pa. Feb. 22, 2011) (emphasis in original) (internal quotation marks omitted) (quoting *Walton*, 168 F.3d at 667).

An employer's liability for such harassment may depend on the status of the harasser. "The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citing *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)). An employer is vicariously liable to a victimized employee "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Hitchens v. Montgomery Cty.*, 278 F. App'x 233, 235–36 (3d Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). If, on the other hand, "the person charged with creating the hostile environment is the plaintiff's co-worker, and not a supervisor, liability exists [only] where the [employer] knew or should have known of the harassment and failed to take prompt remedial action." *Hitchens*, 278 F. App'x at 236 (quoting *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)) (internal quotation marks omitted).

Here, whether Schittler has met his burden to establish a hostile work environment claim is a difficult determination to make. Schittler received several harassing text messages and a harassing package at his home.[6] (Doc. 35, at 6; Doc. 39-2, at 10-11; Doc. 39-13, at 1-3;

---

[6] Iron Valley Ceilings asserts that the harassment was not related to Schittler's physical disability and therefore cannot form the basis of an ADA claim. (Doc. 43, at 12). Yet, as discussed *supra*, there exist questions of fact regarding whether the harassment was a response

18

Doc. 39-16, at 1-3; Doc. 39-18, at 4). In regard to the text messages and the package, this Court finds a reasonable jury could find them to be severe and pervasive, given their frequency and the harsh language used, as well as the humiliation that accompanies receiving a chocolate penis in the mail with the caption "eat a dick." (Doc. 35, at 6; Doc. 39-2, at 10-11; Doc. 39-13, at 1-3; Doc. 39-16, at 1-3; Doc. 39-18, at 4); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (defining severe or pervasive as humiliation that would "contaminate an environment").

Having found that the record contains issues of fact as to whether the harassment could be considered severe and pervasive, the Court turns to whether a reasonable jury could find from the evidence in the record that Iron Valley Ceilings could be liable to Schittler based upon its response. *Hitchens*, 278 F. App'x at 236. After reporting the text message harassment to Lingle, Blair was disciplined on the same day and the harassment stopped promptly. (Doc. 35-4, at 17-18; Doc. 35-7, at 20-21). Schittler also reported the package incident to his supervisors. (Doc. 39-4, at 39; Doc. 39-11, at 10-11). In response to that report, Iron Valley Ceilings did nothing. (Doc. 35-3, at 16-17; Doc. 39-11, at 10-11). There is also no evidence in the record that the package was sent by any particular coworker and the package did not identify a sender. (Doc. 39-4, at 38-39; Doc. 39-11, at 10-11; Doc. 39-13). At this stage, the Court is mandated to construe disputed facts of in favor of the non-movant. *Pastore*, 24 F.3d at 512. While mere conclusory allegations and self-serving testimony, when uncorroborated, cannot help a plaintiff avoid summary judgment, there is evidence that Lingle did not even do the bare minimum by reporting the incident to Human Resources or asking if any other

---

and reference to Plaintiff's disability and inability to complete heavy manual labor. Therefore, making all factual inferences in favor of the non-movant, the Court will find that such harassment can form the basis of the ADA claim at the summary judgment stage.

employee had information about the incident. (Doc. 35-3, at 16-17); *see Pastore*, 24 F.3d at 512. As such, questions of fact remain as to whether Iron Valley Ceilings could have done more in response to these incidents. (Doc. 35-3, at 16-17); *see Andreoli v. Gates*, 482 F.3d 641, 649 (3d Cir. 2007) ("a reasonable juror could find that management at the DSCP failed to take prompt and adequate remedial action after learning of the alleged harassment against [plaintiff]" when it failed to investigate claims of harassment); *Davis v. Nat'l R.R. Passenger Corp.*, 733 F. Supp. 2d 474, 487 (D. Del. 2010) (denying an employer's motion for summary judgment on a hostile work environment claim when a plaintiff did not show specific evidence of racism such as name-calling but did show that the employer failed to investigate subtle harassment, including leaving feces on plaintiff's desk on one occasion). For these reasons, the motion for summary judgment on the hostile work environment claims will be **DENIED**. (Doc. 34).

## IV.    CONCLUSION

For the foregoing reasons, the motion for summary judgment will be **DENIED** as to the disability discrimination and hostile work environment claims and **GRANTED** as to the retaliation claims. (Doc. 34).

An appropriate Order follows.

BY THE COURT:

Dated: February 18, 2025                *s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**